is Appeal Number 23-3031, People of the State of Illinois v. 3M Company. Whenever you're ready, Mr. Skocza. Good morning. Good morning. Thank you, Your Honor. May it please the court, counsel, Michael Skodro, on behalf of the defendant, appellant 3M. This court's decision in Baker is controlling and requires reversal of the remand order below. Indeed, at this point, the state says it would subtract out damages caused by AFFF PFAS and calculating damages when chemically identical AFFF PFAS and Cordova PFAS is commingled. But that's exactly what the plaintiffs tried to do in Baker, where this court correctly recognized that a federal court must perform those allocations. But in any event... Counsel, wasn't Baker different? In Baker, they were talking about the freon, backing out freon. But there wasn't an acknowledgment that that meant that they'd back out exposure to lead and arsenic. Here, we're not even necessarily talking about exposure paths. We're not talking about something where only part of it was disclaimed. We're talking about fixed sites and environmental claims. But, Your Honor, in Baker, as in this case, the freon was a source of the chemicals that were being challenged. Just as here, AFFF houses precisely the same PFAS chemical, identical to the PFAS being talked about in the Cordova facility. So the sources, just as in that case, the sources of the self-same chemical are different. And the question is, which court ought to do that apportionment? And is this court correctly recognized in Baker? And you contrast it with the decision below in Baker, which, by the way, relies on a case like Kelleher, precisely the same authority being relied upon by the state in this case. It's clear that this court was rejecting the idea adopted by the district court in Baker, that that apportionment is not part and parcel of the defense and isn't something that ought to be in front of a federal court. And I do want to add, Your Honor, that while we're talking about apportionment of damages and parts of the briefs are devoted to that, there's another argument at issue here, too, which I think is logically prior. And that is, looking at the complaint, the complaint also seeks significant injunctive relief, monitoring, remediation, air and water, investigation, public information. There's no suggestion as to how one could go about allocating injunctive relief in this case. It's consistent with, as we point out in our brief, page 218 in the record, A218, and the footnote on that page, which shows that in the trial court, even as to damages, putting aside injunctive relief, there was a stated effort on the part of the state to collect for an entire site or resource if some of the contamination there, some of the PFAS originated from the armory. So you really have two levels. The first is, is apportionment even going to be possible? Certainly not as to the injunctive relief. And that was, again, not the position of the state below even as to damages. But even if you could, then we get to Baker. And Baker tells us that those complex apportionment decisions are for the courts to make. And it did so with good to that in Baker. The Baker decision recognizes that with the 2011 amendment, relate to is now added to for. And the Congress was intending to broaden the scope of cases that would be brought into federal court where there was a potential for a federal officer argument to be raised, as it is here. And clearly, to put it in very simple terms, clearly the question of whether and to what extent a particular site is contaminated by or contains AFFF, that is mil-spec from an armory, clearly that question relates to the production of mil-spec or the use of mil-spec at the armory. It seems so. Is 3M the only company that manufactures this mil-spec AFFF? Or do other companies manufacture it? So in the PFAS that's used in these products, there are multiple layers here. And in some of the cases around the country, there are other dependents in play. So PFAS is produced or was produced by multiple companies. And there are also multiple sources of AFFF. Now, certainly 3M, yes? I'm sorry. Certainly 3M. You're one of the producers, but not the sole producer. So I didn't see anything here alleging that the mil-spec AFFF that was used at the Rock Island Arsenal was actually produced by 3M. So, Your Honor, in our notice of removal treated as a pleading here, we certainly take on the 3M mil-spec AFFF. I don't want to waste your argument. No, of course. Maybe on rebuttal you could come back and just identify where that is, that it's clear that 3M is the producer or alleging that it's the producer of the chemical at issue. Of the chemical at issue, sure. And I mean to be precise, an A producer. I'm not suggesting we took on... You clearly have stated that you were a producer of mil-spec AFFF, but I didn't see where you were alleged that you were a producer of the mil-spec AFFF used at the Rock Island Arsenal. Ah, okay. That is certainly our position, Your Honor, and I can represent that. I will come back with... Because obviously if you're not the producer of it, all of your arguments go away. Right. No, we have certainly and it is certainly within the... Yes, I will identify that. But certainly within the pleading, certainly it's been our intent that that is the plausible allegation in the notice of removal. So if you prevail here, is every lawsuit involving the PFAS anywhere downriver of the Rock Island Arsenal against 3M removable to federal court? If the claim is... If there is a plausible argument that... And that is the standard. If there's a plausible allegation, and here we support it with the military's own, Army Corps' own report attached to our notice of removal. If there's an allegation that mil-spec AFFF has co-mingled, and that it's going to dis-aggregate, that would, under Baker, require a federal court to do that dis-aggregation. Now I should note that, of course, they have the opportunity in responding to a notice of removal to argue, and to even in some plaintiffs have done so, to provide evidence to the contrary. That is not a plausible allegation. So for example, an isolated... I'm going to make this up. An isolated pond for which there is no possible claim, no plausible argument within Twomley and Iqbal, the applicable standard, no plausible argument of co-contamination. Under those circumstances, then I think the court would be well within its rights to conclude that that was not plausibly alleged in the notice of removal. No dis-aggregation required under those circumstances. I'm about to encroach on rebuttal time, but I do just want to close the opening by saying we really have two levels here. Again, one, it seems quite clear as their own notice of remand, motion to remand made clear, 218 is the most obvious place. There will be instances, perhaps on the damages side, certainly on the injunctive relief side, where we will have to be spending money to remediate or otherwise, under their view, account for mil-spec AFFF. And even if all of that were apportionable, if we ignored the injunctive claims, we looked solely at damages, even if one could dis-aggregate in the manner suggested, that's precisely what Baker requires to happen in a federal court. Thank you. Ms. Johnny? Good morning. Good morning, Your Honor, and may it please the court. Assistant Attorney General Lee Jahnig for the Appellee, the State of Illinois. 3M failed to plausibly allege both the third and the fourth prong of federal officer removal for essentially the same reason, and that is that this case does not present any evidence that the State of Illinois at trial will concede that if the toxins were commingled, there is no liability to 3M. None. Zero. If there's any particular place where the state cannot prove that contamination came from Cordova, then yes, the State of Illinois. No, I asked about commingling. You've got to answer my question. I asked about commingling. If the toxins are commingled, does that mean that there is no liability to 3M whatsoever? Yes, and I think those things mean the same thing. 3M kind of keeps talking about commingling, but that's really just another way of saying that we will not have proved that contamination came from Cordova. No, not really, and I think your brief dances around this issue a little bit. I think there's a 5% from one facility and 95% from another facility. There is no apportionment. As long as that 5% came from Facility A, 3M wins. Nobody will apportion the amount of contaminant that came from Facility B. Is that your position? Yes, Your Honor, because I think that part of 3M's argument is really talking about commingling at a site. I think it's talking about commingling at multiple sites or commingling in the river, and I think with that concession they would be happy. I think, but I didn't get that from the brief, that that's the concession that you're making. Well, our position is perhaps there's some part of the environment, maybe not in the river, but on the banks of the river, something like that, where we can prove that it came from Cordova, and in that instance the state would recover and it wouldn't implicate any federal issue. You'd have to prove that 100% of the contamination came from Cordova, right? You concede that. Yes, and I think 3M is kind of trying to say, well, we're just seeking to recover for contamination all in one place. No, I think 3M's argument is different. I think 3M is saying, and I read this in your brief a little bit, I think 3M is saying that the state kind of wants to have it both ways. The state wants to be able to make an argument in the state court that there's commingling of these toxins, that some came from Cordova but not all, and then the state court will have to apportion what amount came from Cordova and what amount came from other facilities. But I think it's different if, in opening statements, the state of Illinois says if 3M, I guess if the state can't establish that all of the toxins came from another facility. In other words, if the state fails in its burden to establish that 100% of the toxins came from a different facility, 3M wins. Full stop. So our position is still that we're talking about an area that's not sort of a tiny place. So we might be able to prove that all of the contamination came from Cordova in one place, in which case we would recover, and in another place, we couldn't prove that and then we would not recover. That's our position. That's a big concession. 3M kind of makes this argument that we've been changing our position here, but I think we're just trying to say in as many ways as possible that this case is about, is contamination come from Cordova or did it come from something else? But that totally distinguishes Baker because there's no, it seems like these are two ships crossing in the night, at least the arguments, because what you're saying is Baker is totally irrelevant because there is no apportionment necessary in this case, period. That's exactly right. In Baker, the plaintiffs were seeking to recover for contamination from one Superfund site, and then they were trying to carve out a piece that was due to federal activities. Here, what we're saying is we want to recover for contamination from Cordova. That's it. And so there's nothing really to carve out. I had the same question as Judge Kirshen, and I just want to ask it a little bit differently to make sure I understand the state's position. So if 3M comes in, if you're talking about the water or the bank or any portion, and they show that there is AFFF in there, or I don't even think they have to show Millspec AFFF, if they show that there's AFFF that caused the, that's contaminated there, you will not seek to recover damages from that location, whether it's water, the bank, et cetera, because you've excluded that from what you're seeking. Yes, and that's what the complaint says. The complaint says we're seeking to recover for contamination. And the next question is you would not ask the court or the jury at that point to say, well, sure, there might be some AFFF in there, but they've only proven that goes to 10% of the contamination. Cordova caused the other 90%, and therefore we can recover that 90%. Is that correct? You are not going to make an argument like that? That's right. I mean, and maybe I'm, maybe there was some confusion in the briefing. I mean, again, we're talking about an area that's, you know, there could be contamination over here from Cordova and not from over here. So we'd say to the jury, well, give us recovery from, for this part and not that part. We just want to make clear that the, your argument about Cordova is not going to require any finder of fact to do any kind of apportionment about what may or may not have come from 3M or AFFF. And it sounds like you are agreeing you're not going to argue that. That's right. Right. And importantly, this argument is the same whether, you know, the something else that is not Cordova that caused any given contamination, it doesn't matter whether that is mil-spec AFFF, whether 3M made it, or whether it's a completely different chemical. If it's not from Cordova, then the state will not recover. That's why the state brought this case specifically about this one facility where we have a lot of information about, you know, 3M and its manufacturing there. And so wanting to, you know, get this one case moving as opposed to, you know, these other cases about PFAS and AFFF where we have to do a lot more apportionment and fact finding questions. And Counsel, you started that sentence with, if it's not from Cordova, we're not going to recover. I just want to retread this once more. What you're really saying is if it's not all from Cordova, you're not going to recover. Is that accurate? I mean, I guess, again, this sort of comes down to, like, what are we talking about, you know, on a site? If over here at this part of the bank of the river, we can say that's all from Cordova, then we would recover. If over here, we say, you know, it cannot be determined, we can't prove that it came from Cordova, then we don't recover. I mean, when we're talking about all, I don't think it's, it is not the state's position. It's location specific. In each location, you have to prove it all came from Cordova. Right. And at this point, early in the case, we can't say, you know, what those locations are. That's all. So that's why, you know, I don't want to say, oh, if it can be, if we can't prove it in one location, we're precluded from recovering in any other location. That is not the state's position. I think it's where you put the all. I mean, we're putting the focus of all on... Any particular location. And, or the all on, it all has to be Cordova. That part of the contamination cannot be the AFFF at any location. I'm sorry. So the all, you have to prove that whatever location you're talking about, that all of the damage there arose from Cordova and nothing else. That's correct. And that is, that is what, that is what our complaint is alleged. That's what we argued in our brief in support of Riemann. We said this case is about contamination that was caused by Cordova. So what we have to prove in order to recover is that contamination was caused by Cordova. Maybe it's, maybe it's the whole area that we think is contaminated by Cordova. Maybe it's just one piece of it. Maybe it's none of it. We can't say at this point, but regardless of whether, you know, regardless of the answer to that question, if it's not from Cordova, then the state won't recover. And we don't get into any questions of federal defenses over even what that, what that thing that is not Cordova is. It doesn't even matter. And, you know, I, we made this argument many times in the district court. It's the same argument that we're making here. And sort of, there's been no change in position and that's plain from the face of the complaint. It seems that you are alleging your allegations here in order to avoid the MDL. Should that concern us at all? No, because this is not, you know, this case is not, it's very different from the cases that were presented, you know, that were brought into the MDL. This is a case about a specific manufacturing facility where we have a lot of information about, you know, what's being dumped into the river, what chemicals there are, how elevated the levels are, and the fact that 3M is the one that manages it, as opposed to the MDL, which has a lot of questions just about, you know, there's many defendants even in that case about, you know, where the PFAS got into what drinking water, who made it, what was the source. That's a lot of, you know, and so we just didn't want this case to get bogged down into all of those fact-finding questions. And that's another reason why this doesn't present the claims, excuse me, the sort of artful pleading issues in Baker. Thank you. Thank you, Your Honor. To first address Your Honor's question, on page 833, which is page 14 of the removal papers, we say the state's claims for PFAS contamination of natural resources downstream from the Cordova facility plausibly arise in part from 3M's production and sale of AFFF manufactured. According to military specifications established by the Department of Defense, such mil-spec AFFF was then used, stored, and disposed by the U.S. military at installations in the state of Illinois, including at least the Rock Island Arsenal. So from there, Your Honor, we would say we have certainly plausibly alleged that we are the manufacturer. Thank you for answering that. I would like to address the point just made in the characterization. So just a couple quick points. First, there has been a change. As we point out, on A218, the argument was actually made in their remand papers saying that it is not an argument that 3M should be excused from liability for damages caused by the U.S. Army's discharge of mil-spec AFFF. And then a footnote discussing joint and several liability. As the briefs, I think, acknowledge that isn't the precisely correct term, but the notion was that there would have been liability assigned more broadly. Not anymore. You had to get what you wanted there. I'll just end by saying, Your Honor, during the exchange, there was a discussion of this part and that part, the term location was used, and then the reference to just one piece. And I guess I would just say that if Baker is talking about this sort of small piece allocation, it's unclear at what micro level that's occurring, is itself precisely what Baker is talking about, and talking about the need for those kinds of allocations to occur in federal court. So I don't see a distinction, although obviously, and the same would go for, and I realize I'm over my time. Go ahead. You can finish answering. Thank you, Your Honor. The same would go for the remedial measures. It's hard to imagine that the remedial measures, including cleaning groundwater, for example, or the other types that are talked about, even air remediation, how that could occur on the kind of micro place location level we're talking about. And again, I just think all of that suggests that that's exactly the concern that Baker had in mind in discussing complex factual determination. Something they have said in their brief a couple of times correctly would require complex. Thank you, Mr. Scodro. Thank you, Your Honor. The court will take the case under advisement. Thanks to both counsel. The final case